**Lynn HINRICHS, Plaintiff,**

v.

**Gerald WHITBURN, Secretary, Wisconsin Department of Health and Social Services, Defendant and Third–Party Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of the U.S. Department of Health and Human Services; Marion Steffy, Regional Administrator of U.S. Department of Health and Human Services, Family Support Administration, Chicago, Illinois, Third–Party Defendants.**

No. 90–C–0072–C.

United States District Court, W.D. Wisconsin.

Aug. 23, 1991.

David R. Gault, Dodgeville, Wis., for plaintiff.

F. Thomas Creeron, III, Asst. Atty. Gen., Richard Humphrey, Asst. U.S. Atty., Madison, Wis., for defendant Gerald Whitburn.

Richard Humphrey, Asst. U.S. Atty., Madison, Wis. (Donna Morros Weinstein, Chief Counsel, Barbara F. Altman, Asst.

Regional Counsel, Lauren S. Ruby, Asst. Regional Counsel, Dept. of Health & Human Services, Chicago, Ill., of counsel), for defendant Louis W. Sullivan, M.D.

## OPINION AND ORDER

CRABB, Chief Judge.

This is a civil action for injunctive and declaratory relief brought pursuant to 42 U.S.C. § 1983. Plaintiff was granted leave to proceed *in forma pauperis* on her claims that the state's failure to grant her an exemption from mandatory participation in the Aid to Families with Dependent Children work program, and the subsequent reduction in her benefits, violated her right to the free exercise of her religion under the First Amendment, and her rights of substantive due process and equal protection under the Fourteenth Amendment.

The case is now before the court on plaintiff's motion for summary judgment.[1] Plaintiff contends that her decision to teach her children at home in accordance with her religious beliefs warrants her exemption from participation in the AFDC work program. She challenges the state's decision to reduce her benefits as a violation of her constitutional rights under the free exercise clause of the First Amendment, and the equal protection and due process clauses of the Fourteenth Amendment. The defendants respond that plaintiff's First Amendment claim is not ripe because she has not effectively presented it to the state for consideration, and that plaintiff's Fourteenth Amendment claims fail because defendants have a reasonable basis for not granting an exemption for persons teaching their children at home.

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Indiana Grocery, Inc. v. Super Value Stores Inc.*, 864 F.2d 1409, 1412 (7th Cir.1989). If a party

fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the opposing party is proper. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. When a party moves for summary judgment and the record developed on that party's motion reveals that the opposing party is entitled to judgment, a court enjoys discretion to grant summary judgment to the non-moving party. *Mason v. Melendez*, 525 F.Supp. 270, 287 (D.C.Wis.1981); 10A C. Wright and A. Miller, *Federal Practice and Procedure* § 2720 (1983). A court may grant summary judgment to the non-moving party if the moving party is afforded an adequate opportunity to show that there exists a genuine issue of material fact that renders summary judgment inappropriate. *Id.*

I find that plaintiff has failed to show that it would be futile for her to ask the state for an exemption so that she could teach her children at home for religious reasons. Therefore I conclude that her First Amendment claim is not ripe for decision. Defendants' motion for summary judgment will be granted on this issue.

I conclude also that defendants are entitled to summary judgment to defendants on plaintiff's Fourteenth Amendment claims. Plaintiff has failed to show that defendants' decision not to treat home schooling as a work activity constitutes an arbitrary or unreasonable denial of her right to direct the education and upbringing of her children, or that it deprives her of equal protection.

For the purpose only of deciding plaintiff's motion for summary judgment, I find from competent evidence in the record as well as from the parties' proposed findings of fact that the following facts are undisputed.

## FACTS

Plaintiff Lynn Hinrichs is a resident of Sauk County, Wisconsin. Defendant Gerald Whitburn is the Secretary of the Wis-

---

1. Also before the court is the federal defendant's motion for leave to file a memorandum of law, instanter, in response to plaintiff's reply brief. Because defendant's memorandum adds little to

the arguments raised in the extensive briefs of both parties, I have not given it any particular consideration.

consin Department of Health and Social Services. Third-party defendant Louis Sullivan is the Secretary of the United States Department of Health and Human Services.

Plaintiff is the natural mother of six children between the ages of seventeen and six. Her two oldest children are from a prior marriage that ended in divorce. Plaintiff has received benefits for these two children for approximately sixteen years, under the Aid to Families with Dependent Children program. She began receiving AFDC benefits on behalf of her present husband and their four children in June 1990.

Plaintiff is a traditionalist Roman Catholic. She is a member of the Sacred Heart Parish in Reedsburg, Wisconsin, but does not attend mass because her traditional views conflict with the manner in which the mass is celebrated at the Sacred Heart church.

Plaintiff believes that her children are a gift from God and that she has a responsibility to assure that they are taught the word of God. She believes her purpose in life is to teach her children, and that the Bible states that this is the prime duty of a mother. She believes that the word of God cannot be taught as a separate school subject, but must be part of her children's total educational process. She does not believe that parochial schools teach the word adequately because they have become too worldly and do not teach the traditional beliefs she espouses. She believes also in the importance of keeping her children from exposure to the materialistic world and to non-traditional religious beliefs until they are old enough in her judgment to make moral and religious decisions for themselves.

Plaintiff has been teaching her children at home since August 1986. She established a home-based educational program she calls "Christ the King Christian School," as soon as she became aware that Wisconsin law permitted home schooling. Wisconsin law requires participants in home-based educational programs to provide at least 875 hours of instruction each school year; plaintiff provides her children over 1000 hours of instruction. She uses a progressive series of religious textbooks prepared for Roman Catholic schools, which she supplements with the Bible, a textual concordance of the scriptures, the pre-Vatican II Baltimore Catechism, and various Catholic reference books. She intends to continue teaching her children at home until they are educated.

For three successive school years ending with the 1988–1989 school year, plaintiff taught her children at home. Beginning in the fall of 1989, she allowed her two oldest boys to attend public schools, believing that they had a good Christian background and were old enough to make their own moral and religious decisions, and believing also that they might have a better chance of gaining admission to college if they had high school diplomas.

On November 3, 1988, plaintiff received a notice from the Sauk County Department of Human Services advising her of a mandatory enrollment appointment with the Wisconsin Employment Opportunities Program, which is Wisconsin's AFDC work and training program under Titles IV–A and IV–C of the Social Security Act. The notice advised plaintiff that her contact person was Candyce Potts at the Baraboo, Wisconsin, Job Service office; that the appointment would last approximately three and one-half hours; and that funds were available to assist the participants in paying for any child care and transportation costs they would incur. On November 14, 1988, plaintiff's counsel wrote to the responsible Sauk County income maintenance worker and requested that plaintiff be exempted from the employment program because of her "desire to educate her children at home according to her professed religious beliefs."

On November 15, 1988, plaintiff went to the Baraboo Job Service office, where the WEOP orientation session was being held, and explained to the receptionist that she could not participate in the Wisconsin Employment Opportunities Program because she was teaching her children at home on a

full-time basis. She left without attending the orientation session.

On November 22, 1988, plaintiff was sent a notice directing her to meet with a Division of Vocational Rehabilitation counselor. Plaintiff met with the counselor on November 30, 1988. The counselor told plaintiff to contact him if she decided to go back to school. Neither the plaintiff nor the counselor seemed to know why she was sent to see him.

On December 2, 1988, plaintiff was sent a final notice to report to Baraboo Job Service for an interview and a WEOP enrollment group session that would last approximately three hours. On the notice was the warning that "[u]nder regulations governing receipt of your AFDC grant, failure to keep this appointment can cause you to lose your AFDC grant." Plaintiff met with Potts, her assigned contact person, at some time during this period and told Potts that she already had a job home teaching her children for religious reasons. Plaintiff did not report to the Baraboo Job Service on December 9, and she has never attended a WEOP orientation or enrollment session. Plaintiff received a second notice telling her to meet with Potts on December 19 for a fact-finding meeting at which she would have a chance to explain her apparent failure to meet WEOP requirements. On December 14, 1988, plaintiff's attorney wrote Potts and explained that plaintiff was teaching her children at home for religious reasons and so should be exempted from WEOP requirements.

On January 9, 1989, the Sauk County Department of Human Services issued a notice of decision terminating plaintiff's AFDC benefits effective February 1, 1989, for her failure to participate in the WEOP program. On January 23, 1989, plaintiff requested a fair hearing through the Wisconsin Department of Health and Social Services.

On March 13, 1989, an administrative law judge heard plaintiff's appeal. During the hearing, plaintiff testified that she had a religious program for her school, which was named "Christ the King Christian School." However, plaintiff did not testify further or present any evidence about her religious objections to participation in the work program. At summation, plaintiff's attorney asserted plaintiff's belief that application of the home schooling rule to plaintiff was unconstitutional because it interfered with her right to the free exercise of her religion. Plaintiff's attorney also acknowledged that the administrative law judge did not have the statutory authority to decide constitutional issues.

The administrative law judge found that plaintiff did not have good cause for failing to comply with the program by not attending the mandatory appointments and that she was not exempt from participation because of her teaching. The administrative law judge stated that she did not consider the constitutional issue because she did not have state law authority to do so. Plaintiff's request for rehearing was denied.

As a result of the hearing, plaintiff's benefits were reduced. She was to continue to receive the portion of the benefits for her children, but not the portion for herself because she was not in compliance with the work program. Pending the outcome of this suit, however, plaintiff's portion of the benefits have been continued. If plaintiff does not prevail, she will be required to repay a portion of the overpayment that will result from the continued payments.

No employee of the Wisconsin Department of Health and Social Services has ever informed plaintiff that she must get a job or risk forfeiting her AFDC benefits.

Wisconsin does not view teaching one's own children at home as the equivalent of "working." Such teaching does not produce income and is not likely to lead to economic self-sufficiency. The federal defendants have advised the state that this view is consistent with the Department of Health and Human Services' construction of the term working. The federal defendants have also advised Wisconsin that no federal statute or regulation exempts AFDC recipients from the requirements of Title IV of the Social Security Act, and that if Wisconsin makes AFDC payments that are not in conformity with its State Plan, the department has the authority to disal-

low federal financial participation in those payments.

There is no specific "good cause" exemption from participation in education, training and employment programs governed by WEOP regulations that applies to plaintiff.

## OPINION

The threshold question is whether plaintiff's claim is ripe for review. Plaintiff contends that the state's reduction of her AFDC benefits for failure to participate in required AFDC work programs violates her First and Fourteenth Amendment rights. She requests an order declaring unconstitutional the withholding of AFDC benefits from her because of her religious beliefs. Defendants argue that there is no possible infringement on plaintiff's religious freedom in requiring her to attend one three and one-half hour session with an income maintenance worker, and that it is pure speculation that plaintiff will be forced to accept a job or training that will interfere with her ability to teach her children at home.

■ Article III of the Constitution limits courts to deciding actual "cases or controversies." *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 471, 102 S.Ct. 752, 757, 70 L.Ed.2d 700 (1982). Ripeness is an element in a court's determination whether a claim is a case or controversy. Ripeness requires that the parties to a dispute be in clear disagreement over a legal issue. In determining whether a claim is ripe, a court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

■ In making her First Amendment claim, plaintiff fails on both *Abbott* criteria: she has not presented her claim for a religious exemption from working to the ap-

propriate department personnel so that they can decide the matter on its merits, and she has not shown that she will suffer a hardship if this court does not hear her claim at this time.

As an AFDC recipient, plaintiff is required to register and participate in the state WEOP (JOBS) program. Wisconsin Administrative Code § HSS 201.19(1); 45 C.F.R. § 250.30. This program is intended to promote economic independence among present aid recipients.[2] All AFDC recipients are registered automatically for the WEOP program when they sign their AFDC applications. HSS § 201.19(1) and § 208.02(1). The department then schedules a mandatory interview and orientation session for each recipient. Notice of the mandatory session includes both a statement that non-attendance will result in a reduction in benefits and the name and phone number of a contact person in the program. Department regulations do allow a number of exemptions and "good cause" reasons for non-participation in the program. HSS §§ 208.05 and 208.08(3).

Plaintiff has not produced evidence to show that she has a religious-based objection to working, or to attending the mandatory interview and orientation session. Her objection to program participation is based on her assumption that she will not be granted an exemption and does not have a statutory "good cause" reason for non-participation, and that any required participation in the program will cause interference with her religious teaching of her children. However, she has not presented her case to any department workers. More important, she has not been told that she must take a job that will interfere with her home teaching of her children. She is speculating that that will be the outcome of participation in the work program.

Plaintiff contends that the department has refused to exempt her from participation in WEOP based upon its policy that home schooling does not constitute "work-

---

**2.** The purpose of the JOBS program is to assure that needy families with children obtain the education, training, and employment that will help avoid long-term welfare dependence.

45 C.F.R. § 250.0

ing," and that it has refused to find good cause for her refusal to participate, based upon her religious beliefs.[3] However, the extent of plaintiff's attempt to present her case for a religious exemption to the department has been very limited. Her attorney has written one letter to her income maintenance worker, Robin Romberg, stating that plaintiff should be exempted from the work program because of "her desire to educate her children at home according to her professed religious beliefs." Plaintiff met briefly with her WEOP case worker, Candyce Potts, and told her she already had a job. Plaintiff's counsel also wrote a letter to Potts, advising her that plaintiff was teaching her children at home for religious reasons and so should be exempt from the work program requirements. But plaintiff did not attend either of the two mandatory meetings she was instructed to attend, even though the notices of the meetings informed her that she would have a chance to explain her situation. She did not explain to either Romberg or Potts the extent of her religious beliefs about her school or why those beliefs precluded her from participating in the work program. On the basis of her attorney's summary statements to Romberg and Potts that plaintiff would not be attending the mandatory meetings because she was teaching her children at home "for religious reasons," plaintiff seeks to be relieved of the requirement that she enter into any meaningful discussions with department personnel or take the usual steps in the process of determining whether she might be exempt from the work program.

Plaintiff's attorney did present the First Amendment claim to the administrative law judge who upheld her benefits reduction. However, plaintiff neither testified nor presented any evidence about her religious objections to participation in the work program. At summation, plaintiff's attorney argued that application of the home schooling rule to plaintiff would be unconstitutional because it would interfere with plain-

tiff's right to religious freedom of expression. Plaintiff's attorney also acknowledged that she knew the administrative law judge did not have statutory authority to decide constitutional issues.

Plaintiff cannot contend she has made an effective presentation of her First Amendment challenge to the department when she has done nothing more than raise before the administrative law judge her claim that the WEOP program interferes with her First Amendment rights. The administrative law judge did not have the authority to consider plaintiff's constitutional challenge to the entire program. Plaintiff should have presented her case to the first line income maintenance worker or the WEOP case worker. HSS § 208.07 states that "[e]ach WEOP agency shall provide or make provision for ... (1) [c]ounseling to identify and resolve personal or family problems which may interfere with the person's ability to participate in WEOP activities or obtain and retain employment." The *AFDC Handbook*, Appendix, 5.6.1 directs that "[w]hen a mandatory AFDC registrant enrolled in [the work program] does not participate as required, WP staff initiates a reconciliation process. Its purpose is to solve problems, clarify information, and promote participation in WP." The *AFDC Handbook*, Appendix, 5.6.2 states that while "[t]he IM agency sanctions any mandatory participant who fails to participate ... without good cause ..., the IM agency may override the finding of 'no good cause' if it has other information.... The final decision to impose a sanction is the IM agency's." Plaintiff has made no showing that her income maintenance worker or WEOP case worker could not or would not hear her First Amendment claim and work with her to resolve the conflict she perceives. The administrative law judge could not hear plaintiff's constitutional claim, but that does not mean that plaintiff need not present an effective one to the department personnel who might hear it.

---

3. Working does not include a caretaker teaching a child in a DPI registered home educational program. Do not exempt the caretaker from having to participate in AFDC–WP

for this reason, even though the home program qualifies as a school.
*AFDC Handbook,* Appendix § 5.3.7.

In *Menora v. Illinois High School Ass'n,* 683 F.2d 1030 (7th Cir.1982), *cert. denied,* 459 U.S. 1156, 103 S.Ct. 801, 74 L.Ed.2d 1003 (1983), the court of appeals for this circuit warned that in religion accommodation cases it was necessary to define competing interests of parties as precisely as possible before attempting to balance them, because it may become apparent that there is no real conflict at all. *Id.* at 1033. Here, plaintiff has given the department no chance to decide whether her circumstances are such that there is "good cause" to excuse her from participation in the program; instead, she has assumed what the department's decision would be. Plaintiff's "conflict" is only an assumed one at this time. Until she can show that an actual conflict exists, her claim is not ripe.

Plaintiff has not supplied factual evidence that the department would deny her request to be excused from program participation. Had she done so, she could argue that it is futile to make her attend the department's meeting. *See Planned Parenthood Ass'n of Chicago v. Kempiners,* 700 F.2d 1115 (7th Cir.1983) (plaintiff should not be made to go through empty gestures if result will undoubtedly be the same, and a court would have no new information later than it has now). In *Planned Parenthood,* an Illinois statute prohibited an award of state funds to any organization that provided abortion counseling. When Planned Parenthood applied, it was refused funding, but on the legitimate grounds that only former recipients of the funds were being considered. When Planned Parenthood sued, the court heard the case because the statute left no room for interpretation as written. It was futile for Planned Parenthood to have to wait for a former recipient to drop out of contention, and then re-apply and be turned down because of its abortion counseling services. The result would be the same and Planned Parenthood's actions futile; therefore Planned Parenthood could bring its constitutional claim without delay.

In *Unity Ventures v. Lake County,* 841 F.2d 770 (7th Cir.1988), the court considered the concept of futility in regards to administrative agency action. In that case, the plaintiffs brought a due process claim after their county denied sanitary sewer access to their land so they could not develop it as planned. The court adopted the reasoning of a similar Ninth Circuit case in determining that the case was not ripe. *Id.* at 775. Before a suit was ripe for adjudication, the court ruled, the administrative agency must have made a final decision. *Id.* That final decision requirement could then be met with proof that attempts to comply would be futile. *Id.* Futility could not be established, however, "until at least one meaningful application has been made." *Id.* Allegations by the plaintiff that they had "done everything possible" or that further applications to the agency would "useless" do not suffice to prove futility. *Id.* at 776. In *Unity Ventures,* "the law require[d] a greater legitimate effort to follow administrative procedures than plaintiffs ha[d] made." *Id.*

The same is true in this case. It is true that the state is dependent on the federal government for 90 percent of its AFDC funding, and that if the department makes payments that do not conform to the state plan it has submitted to the federal department, the state may lose its federal funding. It is also true that both the state and federal regulations specifically deny an exemption from the work program because a participant is teaching her children at home.[4] However, the regulations provide several other avenues that the department might use to accommodate the plaintiff.

HSS § 208.08(3) lists the circumstances under which a good cause excuse for nonparticipation in a work program may exist. The list includes "[a]ny other circumstance beyond the control of the client." This provision seems to allow at least the possibility that the department can find good cause in plaintiff's situation.

**4.** See note 2, supra. The department adopted this policy on July 1, 1989, while plaintiff's case was pending.

In addition, HSS § 208.07(1) requires each WEOP agency to provide counseling to identify and resolve personal or family problems that may interfere with a person's ability to participate in WEOP activities or obtain and retain employment. This provision may afford an agent enough latitude to tailor plaintiff's participation so that she can still teach her children at home.

Even the program goals can be read to accommodate plaintiff. One goal of the program is "to foster an attitude that each must do 'what is possible' to become self-sufficient." WEOP State Plan under the WIN Demonstration Program, II. C. 1. e. (1988). Again, if given the chance, the department may decide that all plaintiff can do at the present time is attend the mandatory initial session.

Plaintiff's First Amendment claim is not ready for judicial decision at this time. She has confused the department's basis for its sanction of her, that she inexcusably missed a mandatory interview and orientation meeting, with her speculation about what the outcome of that meeting would be. Nothing in the record indicates that plaintiff had a religious objection to the meeting itself, or that she gave the department an opportunity to discuss with her how her religious views might affect her work possibilities. There is no clear dispute between the parties because the department has not had a chance to make a final decision. Until plaintiff can show that she has made a legitimate and effective application for a religious exemption to her income maintenance worker and her WEOP case worker for a final department decision, or that doing so would be futile, her First Amendment claim is not ripe. Because she has not shown that it would be futile for her to follow department procedures, it is premature to consider whether the department has infringed unconstitutionally on plaintiff's religious freedom.

The second prong of the *Abbott* ripeness analysis requires the court to evaluate the hardship to the parties if consideration of the matter is withheld. *Abbott*, 387 U.S. at 149, 87 S.Ct. at 1515. The state defendant has shown that plaintiff has a course of action to follow to cure her sanction. The *AFDC Handbook*, at Appendix 5.6.6(1), directs that plaintiff must contact the department and agree to comply with work program requirements. At this time, agreeing to comply means meeting with the income maintenance worker. Under 5.6.2 this worker may override the WEOP case worker's finding of "no good cause" if the plaintiff presents information that warrants the change. Through this process, the plaintiff may present her concerns to the department and begin the interaction necessary to a determination of how the department will handle her concerns regarding possible work program interference with her religious practices.

This procedure may not cure plaintiff's current injury; although her benefits have been continued pending this appeal, she may have to repay a portion of the difference between the amount she has received and the reduced amount to which she is presently entitled under sanction. However, plaintiff has not shown that the state would not continue to pay her full benefits while she pursues the next steps and presents her case to the department. Therefore plaintiff has not shown that she will suffer any additional hardship if I do not entertain her First Amendment claim at this time.

In addition to her First Amendment claim, plaintiff alleges that defendants have violated her rights to equal protection and due process guaranteed by the Fourteenth Amendment. I first address plaintiff's substantive due process claim: that defendants' home schooling policy unreasonably infringes upon her right to direct the upbringing of her children.

It is unclear whether plaintiff's substantive due process claim is intertwined with or based on her First Amendment claim. If it is either of these, then it is not ripe because her First Amendment claim is not ripe. In addition, the United States Supreme Court has held that when there exists an explicit textual source of constitutional protection against a governmental intrusion, that amendment, "not the more

generalized notion of 'substantive due process,' " must be the guide for analyzing the claim. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). If plaintiff's due process claim is based on the First Amendment, I cannot decide it.

■ However, plaintiff's due process claim can be read as independent of the First Amendment. As such, she contends that the state's refusal to exempt her, or any other home teacher, from participation in the work program violates her constitutionally protected liberty interest in directing the upbringing and education of her children.

Several cases indicate that such a liberty interest does exist. None intimates that it is a fundamental right. In 1925, the Supreme Court acknowledged "the liberty of parents and guardians to direct the upbringing and education of children under their control." *Pierce v. Society of the Sisters*, 268 U.S. 510, 534–35, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925) (cited with approval in *Wisconsin v. Yoder*, 406 U.S. 205, 233, 92 S.Ct. 1526, 1542, 32 L.Ed.2d 15 (1972) and *Employment Div., Dep't of Human Resources of Oregon v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 1601, 108 L.Ed.2d 876 (1990)). Plaintiff suggests that the validity of defendants' perceived interference with this interest should be subject to strict scrutiny. This would be true if I were considering a fundamental right or a hybrid claim involving the First Amendment. However, when the right at issue is a liberty interest and not a fundamental right the focus in a substantive due process claim is the reasonableness of the government regulation. In *Pierce*, an early case recognizing this particular liberty interest, the Court stated that "the Constitution may not be abridged by legislation which has no reasonable relation to some purpose within the competency of the state." *Pierce*, 268 U.S. at 535, 45 S.Ct. at 573. In *Yoder*, after affirming its decision in *Pierce*, the Court stated that "when the interests of parenthood are combined with a free exercise claim ..., more than merely a 'reasonable relation to some purpose

within the competency of the State' is required to sustain the validity of the State's requirement under the First Amendment." *Yoder*, 406 U.S. at 233, 92 S.Ct. at 1542. In a case with facts much like those in this case, the Court of Appeals for the Eighth Circuit found a strict scrutiny analysis inappropriate when plaintiffs had made no showing of discriminatory impact or intent. *Murphy v. State of Arkansas*, 852 F.2d 1039, 1043 (1988). Since the First Amendment claim is not at issue here, the reasonableness test is the appropriate one.

In *Bowen v. Gilliard*, 483 U.S. 587, 598, 107 S.Ct. 3008, 3015, 97 L.Ed.2d 485 (1988), a case in which an AFDC policy allegedly "interfere[d] with a family's fundamental right to live in the type of family unit it chooses," the Supreme Court ruled that a rational basis test was appropriate, rather than any form of heightened scrutiny. *Id.* at 601, 107 S.Ct. at 3017. In *Bowen*, Congress enacted an AFDC policy that required a family's eligibility for benefits to take into account the income of all parents and children living in the same home. *Id.* at 589, 107 S.Ct. at 3011. The effect of the policy was that many families' total income was reduced when child-support payments from non-custodial parents was taken into account. This led at least one mother to send her child to live with the non-custodial father so as to avoid including the support payments in the family's income. The court found that the policy was not enacted to intrude on family living arrangements; the fact that it did so incidentally did not require a higher level of scrutiny. *Id.* at 601–02, 107 S.Ct. at 3017–18. Similarly, in this case plaintiff does not contend or show that defendants adopted the policy that home schooling did not constitute "working" in order to intrude on a family's educational prerogatives. The fact that she claims such an intrusion does not entitle her to heightened scrutiny. None of the cases plaintiff cites accords strict scrutiny to substantive due process claims.

■ In order for defendant to prevail on the reasonableness test, a court must be able to find a rational reason for defendants' policy not to allow home teaching to

qualify as "working" under the WEOP program. *Unity Ventures v. Lake County,* 841 F.2d at 775, n. 2. Defendants have shown that Wisconsin developed the policy interpretation that individuals engaged in home schooling are not "working" because the activity does not produce income and is not likely to lead to economic self-sufficiency. The purpose of the federally mandated WEOP program is to encourage economic independence. It is reasonable for the defendants to disallow an exemption from the program for an activity that is non-income producing and will not enhance the future earning capacity of an AFDC recipient.

In addition, the Supreme Court has acknowledged Congress's "plenary power to define the scope and the duration of the entitlement to ... benefits, and to increase, to decrease, or to terminate those benefits based on its appraisal of the relative importance of the recipients' needs and resources available to fund the program." *Bowen v. Gilliard,* 483 U.S. at 598, 107 S.Ct. at 3015 (quoting *Atkins v. Parker,* 472 U.S. 115, 129, 105 S.Ct. 2520, 2529, 86 L.Ed.2d 81 (1985)). Because of this deference to Congress, because defendants present a reasonable basis for the policy, and because defendants did not adopt the policy in order to interfere with a family's interest in directing the education of their children, plaintiff's due process claim must fail.

Plaintiff's final claim is that defendants' home schooling policy deprives her of the equal protection of the laws. She bases this claim on the fact that several exemptions are available to AFDC recipients who are engaged in non-income producing activities. Therefore, she asserts, the defendants' failure to exempt home teachers from AFDC work program participation is impermissibly arbitrary.

■ If a legislative or administrative classification does not impinge on a fundamental right, or set up suspect classifications, the classification will generally be upheld. The classification will stand if there is some rational relation between the classification and a legitimate legislative objective. *Kadrmas v. Dickinson Public*

*Schools,* 487 U.S. 450, 108 S.Ct. 2481, 2487, 101 L.Ed.2d 399 (1988). In the area of social welfare, "a state does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.... A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970).

Plaintiff urges a higher level of scrutiny in this case because the classification results in a burden on the asserted fundamental right to direct the education of one's children and to exercise one's religion. Insofar as her equal protection claim is intertwined with her First Amendment claim, plaintiff's suit is not ripe. Having already decided that the right to direct the education of one's children is a liberty interest and not a fundamental right, I will consider this claim using the rational basis test.

■ Plaintiff asserts that the defendants' classification is arbitrary because defendants allow exemptions to other groups who do not produce income. Plaintiff compares the classification of home teachers to several others. The first comparison is to Learnfare students. Learnfare is a work program under which a teenager can be removed from the family's AFDC grant if the teenager misses too many days of school. *AFDC Handbook,* Appendix, 5.1.4 and 6.2.0–6.2.2. However, a teenager has good cause for not attending school if she or he is exempt from compulsory school attendance for religious reasons. *AFDC Handbook,* Appendix, 6.2.3. Plaintiff asserts that it is irrational for the defendants to exempt children from participation under Learnfare, and yet sanction parents who wish to teach their children at home. To the extent that plaintiff is raising her First Amendment claim, it is not ripe. Without that, plaintiff would have to show that she has been deliberately singled out for disparate treatment from others similarly situated. *Gray v. Lacke,* 885 F.2d 399, 414 (7th Cir.1989), *cert. den.* —— U.S. ——, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990). Plaintiff would have to show that an adult home

teacher is in a similarly situated class with a child who must attend school.

In *Richardson v. Belcher*, 404 U.S. 78, 83, 92 S.Ct. 254, 258, 30 L.Ed.2d 231 (1971), the Supreme Court made clear that "two unlike classes [cannot] be made indistinguishable by attaching to them a common label." Plaintiff has not shown that she is situated similarly to a child enrolled in Learnfare or that the goals of the two programs are the same. Since plaintiff has not met her burden, no equal protection claim is implicated.

Plaintiff also compares her non-exempt classification to the exempt classifications of foster parents, *AFDC Handbook*, Appendix, 5.3.6., VISTA volunteers, 45 C.F.R. § 250.30(b)(10), and those who care for a family member with a serious medical condition, *AFDC Handbook*, Appendix, 5.3.5. But "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *Dandridge v. Williams*, 397 U.S. at 485, 90 S.Ct. at 1161. Defendants have supplied reasons for two of these distinctions. Foster parents are paid for the work they do. Wis.Admin Code § HSS 56.09(1). The exemption of VISTA volunteers is mandated by Congress, Pub.L. 96–143; no statute exempts home teachers from participation in JOBS or WEOP. As for the third classification, it is not difficult to conceive why the defendants would grant an exemption for care of an ill family member, since it is likely to cost more to provide another caretaker for the ill person than to have the recipient do it.

Because the plaintiff has not shown that the classification of which she is a member is the result of an arbitrary government decision, I find her equal protection claim without merit.

### ORDER

IT IS ORDERED that summary judgment is GRANTED to defendants and this case is DISMISSED. The Clerk of Court is directed to enter judgment for defendants.