UNITED STATES, Appellee,

v.

Paul ROULEAU, Defendant, Appellant.

No. 88–1846.

United States Court of Appeals,
First Circuit.

Heard Nov. 9, 1989.

Decided Jan. 23, 1990.

Robert H. Astor, Springfield, Mass., for defendant, appellant.

2. U.S.S. Yachts's motion to strike Ocean's sup- plementary appendix is granted.

Brien T. O'Connor, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before BOWNES, Circuit Judge, VAN GRAAFEILAND,* Senior Circuit Judge, and SELYA, Circuit Judge.

VAN GRAAFEILAND, Senior Circuit Judge.

Paul Rouleau appeals from his conviction in the United States District Court for the District of Massachusetts of conspiracy to possess marijuana with the intent to distribute, 21 U.S.C. § 846, use of a telephone to facilitate a marijuana conspiracy, 21 U.S.C. §§ 841(a)(1) and 843(b), and engaging in a continuing criminal enterprise, 21 U.S.C. § 848. He challenges his conviction on the three counts on the ground of alleged prosecutorial misconduct. With regard to the continuing criminal enterprise count, he also relies on the 5–year statute of limitations contained in 18 U.S.C. § 3282. We affirm. For convenience of discussion, we turn first to the statute of limitations challenge.

## THE STATUTE OF LIMITATIONS

■ In order to be convicted of a continuing criminal enterprise violation under 21 U.S.C. § 848, a defendant must have committed a felony violation of the federal narcotics laws as part of a continuing series of violations in concert with five or more persons for whom he was an organizer, supervisor or manager, and from which series he obtained substantial income or resources. The reference to organizers, supervisors or managers in section 848 must be read in the disjunctive, i.e., "organized, supervised or managed." *United States v. Mannino*, 635 F.2d 110, 116 (2d Cir.1980) (emphasis in original); *see United States v. Jeffers*, 532 F.2d 1101, 1115–16 n. 17 (7th Cir.1976), *aff'd in relevant part*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977). Moreover, these terms are distinct in their meaning; the concept of control that is implicit in the terms supervise and manage, is not implicit in the term organize; a person may organize an enterprise

without supervising or managing it. *United States v. Apodaca*, 843 F.2d 421, 426 (10th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 325, 102 L.Ed.2d 342 (1988); *United States v. Oberski*, 734 F.2d 1030, 1032 n. 3 (5th Cir.1984); *United States v. Ray*, 731 F.2d 1361, 1367 (9th Cir.1984). For our purposes, it also should be noted that a section 846 conspiracy may serve as a predicate offense under section 848. *United States v. Middleton*, 673 F.2d 31, 33 (1st Cir.1982); *United States v. Young*, 745 F.2d 733, 751–52 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985). The proof in the instant case must be viewed against the above-described statutory background.

In 1974, Rouleau organized a Massachusetts-based marijuana distribution organization. The organization bought large amounts of Mexican marijuana, first in California then in Florida, transported it to Massachusetts and distributed it there. Rouleau arranged for numerous individuals to act as drivers, managers and buyers. Unquestionably, it was a long-continuing criminal enterprise. Appellant concedes that "the government offered a wealth of evidence relative to appellant's involvement in the distribution of marijuana into 1980." Appellant's Brief at 62.

In 1980, Rouleau told one of his confederates, Hyatt Cunningham, that he wanted to take a less direct role in the organization and no longer wished to manage its day-to-day operations. Rouleau then hired two managers, Philip Boucher and William Marien, to coordinate the purchase and distribution of the marijuana. Boucher handled the Massachusetts portion of the business, and Marien managed the Florida end.

■ The statute of limitations for an offense begins to run when the crime is complete. *United States v. Torres Lopez*, 851 F.2d 520, 522 (1st Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 1144, 103 L.Ed.2d 204 (1989). The original indictment in the instant case was filed on September 18, 1987. The question presented is whether Rouleau's connection with the criminal en-

---

* Of the Second Circuit, sitting by designation.

terprise that he had organized terminated in 1980 or continued at least until September 19, 1982. We hold that it continued.

█ The mere fact that Rouleau delegated managerial duties to Boucher and Marien did not terminate his status as an organizer or supervisor. *See United States v. Apodaca, supra,* 843 F.2d at 426; *United States v. Rosenthal,* 793 F.2d 1214, 1226 (11th Cir.1986), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1377, 94 L.Ed.2d 692 (1987); *United States v. Phillips,* 664 F.2d 971, 1034 (5th Cir.1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). "[O]ne need not be a day-to-day supervisor to play an important role in a criminal enterprise." *United States v. Bond,* 847 F.2d 1233, 1236 (7th Cir.1988). Such a requirement would make it too easy for major drug dealers to insulate themselves from continuing criminal enterprise liability under section 848. *United States v. Cruz,* 785 F.2d 399, 407 (2d Cir.1986).

Although it may be that, after 1980, Rouleau substantially disassociated himself from the day-to-day minutiae of purchases and sales, when the evidence is viewed in the light most favorable to the Government, it is clear that Rouleau did not sever his relationship with the criminal enterprise. Indeed, Rouleau's conviction on the conspiracy count, as to which he makes no substantive challenge, establishes that the predicate conspiracy continued into and beyond 1982. Count One of the Superseding Indictment charged that Rouleau participated in a marijuana conspiracy that began "at least by 1976" and continued "up to and including the date of this indictment." The district court instructed the jury that, if it found that Rouleau had retired from the business by 1982, the jury should find him not guilty. The jury's guilty verdict speaks for itself.

The Government was not content to rely on a presumption that the criminal enterprise conspiracy and Rouleau's role in it continued into and beyond 1982. *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 119, 89 S.Ct. 1562, 1574, 23 L.Ed.2d 129 (1969); *Sperry Gyroscope Co. v. NLRB,* 129 F.2d 922, 927 & n. 8 (2d

Cir.1942); *Telman v. United States,* 67 F.2d 716, 718 (10th Cir.1933). The Government proved that it did. We see no need for an exhaustive discussion of such proof. The Government introduced testimony that on occasion payments for marijuana distributed by the enterprise continued to be made to Rouleau and that Rouleau arranged for substantial sums of money to be transported to Florida for the purchase of marijuana. The Government proved that Rouleau was referred to by his cohorts as the "emperor", the "master", or the "boss" and that he had a fleet of cars, customized vans, two airplanes, an apartment and a trailer in Florida, all of which, the Government argued, demonstrated that Rouleau was receiving substantial income from the drug business.

Finally, as was plainly established by Rouleau's conviction on Count Four, Rouleau continued in control of the enterprise as late as September 1984. Count Four charged that, at approximately 2:30 a.m. on September 21, 1984, Rouleau, "acting in concert and in furtherance of the [criminal enterprise] conspiracy ... use[d] ... a telephone, to cause, facilitate and commit a conspiracy to possess with intent to distribute marijuana" in violation of 21 U.S.C. §§ 841(a)(1) and 843(b). In support of this Count, the Government proved that, shortly after midnight on September 21, Tony Ingemi, an enterprise member, went to Rouleau's house seeking to buy marijuana. At 2:28 a.m., Rouleau telephoned Boucher and instructed him to call Tony the first thing in the morning. Boucher did as he was instructed. Later that day, Boucher delivered sixty pounds of marijuana to Ingemi and collected $45,000 in cash. The marijuana, the cash and a tape of the conversation between Rouleau and Boucher were offered in evidence. This irrefutable evidence makes it strikingly clear that there is no statute of limitations problem here.

## PROSECUTORIAL MISCONDUCT

As part of the Government's proof that Rouleau played an important and continuing role in the criminal enterprise, the Government offered documentary evidence indicating drug transactions totalling

$1,700,000 and payments of money to Rouleau totalling $800,000. Rouleau's attorney, in his closing argument, tried to rebut the evidence that Rouleau had received this $800,000. Observing that the Government had not found the money in its search of Rouleau's home and car, defense counsel, referring to the cash, asked several times, "where is it?". In the Government's rebuttal, the prosecutor answered the defense's query: "Only Rouleau knows where that $800,000 in cash is now."

■ Although Rouleau's attorney did not object at the time this statement was made, Rouleau contends that the statement violated his Fifth Amendment rights by directing the jury's attention to his failure to testify. *See Griffin v. California*, 380 U.S. 609, 613–14, 85 S.Ct. 1229, 1232–33, 14 L.Ed.2d 106 (1965). We reject this argument. In *United States v. Robinson*, 485 U.S. 25, 33–34, 108 S.Ct. 864, 869–70, 99 L.Ed.2d 23 (1988), the Court held that, where a prosecutor's reference to a defendant's opportunity to testify is a fair response to a claim made by defense counsel, there is no violation of the defendant's Fifth Amendment privilege. At worst, the prosecutor's comments in the instant case were a fair response to the defense's argumentative query as to the whereabouts of the $800,000.

*Affirmed.*