4 F.3d 997
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Earl MOORE, Petitioner-Appellant,
v.
Salvador A. GODINEZ, Respondent-Appellee.
 No. 92-2729.
 United States Court of Appeals, Seventh Circuit.
 Submitted Aug. 27, 1993.*
Decided Aug. 27, 1993.
 
 ORDER
 Before MANION and ROVNER, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 
 
 1
 On July 22, 1985, Peter DiVizio, a messenger for an armored car company, was completing a routine stop at a Dominick's grocery store in Chicago. As DiVizio left the store, he was felled by a gunshot and relieved of a bag contained about $22,000 worth of cash, checks, and food stamps. The gunman fled and was soon spotted being driven away in a white station wagon. Investigation led police to look for Earl Moore. On August 11, 1985, following a high speed chase, police arrested Moore for the robbery and shooting.[1]
 
 
 2
 An Illinois jury convicted Moore of armed robbery and attempted murder, for which he was sentenced to 60 years' imprisonment. Moore appealed his conviction to the Illinois Appellate Court, which affirmed. People v. Moore, 576 N.E.2d 900 (Ill.App.1991). The Illinois Supreme Court denied Moore leave to appeal. Moore filed a petition for a writ of habeas corpus in federal district court. The district court denied the petition. R. 13. Moore now appeals to this court.
 
 
 3
 Moore raises three main issues for our review: (1) whether the prosecution deprived him of a fair trial by making various improper remarks during closing argument; (2) whether his arrest and detention deprived him of his rights under the Fourth and Fourteenth Amendments; and (3) whether he was denied a fair hearing in the district court by the State's failure to produce the full state court record.[2]
 
 A. THE PROSECUTOR'S CLOSING REMARKS
 
 4
 Moore first argues that the prosecution deprived him of a fair trial by making various improper remarks during closing argument. The State responds by arguing that the Illinois Appellate Court rejected these claims based on adequate and independent state law grounds, and therefore this court is without jurisdiction to address Moore's federal claims.
 
 1. Independent and Adequate State Grounds
 
 5
 Federal courts have no jurisdiction to render advisory opinions. Hinrichs v. Whitburn, 975 F.2d 1329, 1333 (7th Cir.1992). As a consequence,
 
 
 6
 [the] Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. This rule applies whether the state law ground is substantive or procedural. In the context of direct review of a state court judgement, the independent and adequate state ground doctrine is jurisdictional. Because this Court has no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory.
 
 
 7
 Coleman v. Thompson, 111 S.Ct. 2546, 2553-54 (1991) (citations omitted). The Court has applied the independent and adequate state ground doctrine in deciding whether a federal court should address the claims of state prisoners in federal habeas actions. See, e.g., Wainwright v. Sykes, 433 U.S. 72 (1977).
 
 
 8
 Difficulty arises, however, when the opinion accompanying a state court judgment is ambiguous as to whether it rests on independent and adequate state grounds or whether it rests on federal grounds. To address this problem, the Court has resorted to a presumption that federal review is available, most recently expressed as follows:
 
 
 9
 In habeas, if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition.
 
 
 10
 Coleman, 111 S.Ct. at 2557. Although Coleman speaks of "the last state court to which the petitioner presented his claims," Ylst v. Nunnemaker, 111 S.Ct. 2590 (1991), makes clear that this refers to the last state court to issue a reasoned decision on the petitioner's claim; a later unexplained order upholding an earlier judgment rejecting the same claim is generally not considered. Id. at 2594-95.
 
 
 11
 The issue for this case therefore is whether the Illinois Appellate Court's decision rejecting on direct appeal Moore's claims regarding improper prosecutorial remarks (1) fairly appears to rest primarily on federal grounds, or is interwoven with those grounds, and (2) clearly and expressly relies on an independent and adequate state ground. We will address each of the alleged improper remarks in turn.
 
 
 12
 a. Moore's failure to testify
 
 
 13
 During closing argument, defense counsel reminded the jury that the State had failed to produce evidence that either the weapons used in the offense or the proceeds of the armed robbery were ever found in Moore's possession. The prosecutor responded by saying:
 
 
 14
 Where are the proceeds [of the crime]? Where are the guns? Well, I'll tell you, I know one guy who knows where they are, and he is sitting over here in this chair.
 
 
 15
 The trial court overruled a defense objection to this statement. Moore, 576 N.E.2d at 904.
 
 
 16
 On direct appeal, the Illinois Appellate Court considered Moore's claim that this comment by the prosecutor violated his right not to be compelled to testify against himself. The court noted that Moore relied on both the Fifth Amendment (as applied to the states by the Fourteenth Amendment, see Malloy v. Hogan, 378 U.S. 1, 6 (1964)) as well as the Illinois Constitution and an Illinois statute. See Moore, 576 N.E.2d at 904. The State argues that the Illinois Appellate Court decided the claim based on an independent and adequate state ground, pointing to the fact that the court's opinion contains almost exclusively citations to state court cases. We reject this argument. The Illinois Appellate Court clearly addressed the merits of the failure-to-testify issue, but did not distinguish its analysis between a federal component under the Fifth Amendment and a state component under the Illinois Constitution and Illinois statute. Id. at 904-06. Even if we were to conclude that the Illinois Appellate Court addressed the failure-to-testify issue only with respect to state law, this could not render the Fifth Amendment claim moot. In other words, assuming the court found that the prosecutor's comment had not violated the Illinois Constitution or any Illinois statute, this would not be sufficient to justify the court's decision because the Fifth Amendment issue would remain viable. Thus, the court did not resolve the failure-to-testify issue on an "independent" state ground, see Prihoda v. McCaughtry, 910 F.2d 1379, 1382 (7th Cir.1990) ("A state ground is 'independent' only if the state court actually relied on a state rule sufficient to justify its decision."), and we may address the issue. We will do so after we determine whether the Illinois Appellate Court relied on independent and adequate state grounds in rejecting Moore's other claims of improper prosecutorial comment.
 
 
 17
 b. other comments by the prosecutor
 
 
 18
 Moore claims that the prosecution made several other improper remarks during closing argument: (1) a comment on the substance of a conversation between Detective Thezan and Moore's former girlfriend, Debra Tucker (who did not testify) in which Tucker allegedly implicated Moore; and (2) a comment implying that Moore may have threatened witnesses not to testify against him. The State claims that the state court disposed of these issues on independent and adequate state grounds.
 
 
 19
 As to these issues, we agree with the State. The Illinois Appellate Court stated in its opinion that Moore had failed to object to these remarks during trial and in his post-trial motion.[3] The court concluded that Moore had waived these issues, and that none of the exceptions to the waiver rule applied. Moore, 576 N.E.2d at 907. It does not fairly appear that the court's rejection of Moore's claims was based on federal grounds, so there is no presumption that the state court addressed Moore's federal issues. Coleman, 111 S.Ct. at 2559. Indeed, it is clear that the Illinois Appellate Court relied on a state procedural rule to reject Moore's claims regarding these comments by the prosecutor. Hence, Moore procedurally defaulted on these claims. Because he had made no attempt to show cause and prejudice for this procedural default, nor to show that there has been a "fundamental miscarriage of justice," see Murray v. Carrier, 477 U.S. 478, 495-96 (1986), we cannot review his claims regarding these two statements.
 
 
 20
 2. The Merits of Moore's Failure-to-Testify Claim
 
 
 21
 The Fifth Amendment to the Constitution guarantees that no person "shall be compelled in any criminal case to be a witness against himself." This guarantee implies a corollary: the prosecution may not directly comment on the defendant's failure to testify in his own defense. Griffin v. California, 380 U.S. 609 (1965). In this case, the prosecutor's comment was, at most, only an indirect comment on Moore's failure to testify. However, the Fifth Amendment also imposes limits on indirect comments. As we have said, "[a]n indirect adverse comment may also violate the privilege against self-incrimination if the language appears 'manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the [defendant's failure] to testify.' " United States v. DiCaro, 852 F.2d 259, 263 (7th Cir. 1988) (quoting United States v. Lyon, 397 F.2d 505, 509 (7th Cir.), cert. denied, 393 U.S. 846 (1968))); see also United States v. Koen, 982 F.2d 1101, 1118 (7th Cir. 1992). Here, the prosecutor's comment suggested that Moore, and only Moore, knew the whereabouts of the gun and the stolen money. The implication was that if Moore took the stand, he could explain the whereabouts of these items. The prosecutor's comment thus obviously drew the jury's attention to the fact that Moore had not testified.
 
 
 22
 The State argues that the prosecutor's comment was a proper response to Moore's closing argument. '[W]here ... the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel, we think there is no violation of the privilege.' United States v. Robinson, 485 U.S. 25, 32 (1988); see also Smith v. Fairman, 862 F.2d 630, 640 (7th Cir.1988). The Court in Robinson did not define "fair response," nor does the State attempt to clarify the issue,[4] but we believe the facts of Robinson provide a clue. In that case, the defendant's attorney stated in closing argument that the government had breached its duty to be fair by not allowing him to explain his side of the story. The trial judge allowed the prosecutor to state in rebuttal that the defendant "could have taken the stand and explained it to you." Thus, it was the defendant who first mentioned or alluded to his not testifying. In such a case, we believe that it is fair for the prosecutor in his rebuttal also to refer to the defendant's failure to take the stand.
 
 
 23
 Given this understanding of what makes a response "fair," we believe that the prosecutor's comment in this case was not a fair response. Moore's attorney had simply pointed out that the State had failed to produce the crime weapon or the stolen money. This in no way alluded to Moore's failure to testify. The State's response, however, asserted that Moore knew where these items were and therefore drew attention to the fact that Moore had not taken the stand. If this were to constitute a "fair response," then any time the defendant pointed out a gap in the State's case, the State would be able to assert that the defendant could, if he chose, provide the missing link. We conclude that the State's response was not a fair one within the meaning of Robinson.
 
 
 24
 The State also argues that even if the prosecutor's statement improperly infringed upon Moore's right against self-incrimination and was not a fair response to defense counsel's argument, it was nevertheless harmless error. United States v. Hasting, 461 U.S. 499 (1983). The State argues that the prosecutor's comment was harmless beyond a reasonable doubt because of the overwhelming evidence against Moore. After the State submitted its brief, however, the Supreme Court decided Brecht v. Abrahamson, 113 S.Ct. 1710 (1993), which changed the harmless error standard to be employed in habeas cases. Rejecting the harmless beyond a reasonable doubt standard as too costly on habeas review, the Court held that trial error must be allowed to stand unless the reviewing court concludes that the error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " Id. at 1722 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). Normally, in making this determination, a court would have to review the whole record and attempt to ascertain " 'what effect the error had or reasonably may be taken to have had upon the jury's decision.' " Id. at 1724 (Stevens, J. concurring) (quoting Kotteakos, 328 U.S. at 764). In this case, however, Moore has accepted the Illinois Appellate Court's statement of the facts, so we need only review Moore's claims in light of those facts in conducting our harmless error analysis.
 
 
 25
 Moore argues that the error was not harmless because of alleged weaknesses in the testimony of some of the State's witnesses. Moore challenges Detective Thezan's testimony that he (Moore) implicated himself during questioning. Moore also challenges Janice Vaughns' testimony that he acknowledged in front of her that he robbed an armored car; that he displayed in front of her two guns and a bag containing money, checks, and food stamps; that a man named "Zeke" arrived, with whom Moore spoke about the "armored car robbery"; that Moore referred to one of the pistols as the one with which he had shot the armored car driver; and that a white station wagon had been involved and needed to be cleaned up. Finally, Moore challenges the testimony of several eyewitnesses who either identified him as the perpetrator or placed him at the scene of the crime at the time of the offense.
 
 
 26
 We first consider Moore's challenge to Detective Thezan's testimony. Moore claims that the jury could have disbelieved Thezan considering (1) the absence of any written confession, (2) Thezan's acknowledgement that he was the only one to witness Moore implicate himself, and (3) the fact that Moore suddenly implicated himself after saying nothing during 36 hours of detention. Moore Br. 29-30. Of course, it is possible that the jury could have disbelieved Thezan yet still convicted Moore, but in the end we cannot be certain how the jury viewed Thezan's testimony. Because we do not believe that the factors cited by Moore make it likely that the jury disbelieved Thezan, it seems probable that the jury in fact did believe him.
 
 
 27
 The same type of analysis applies to Janice Vaughns' testimony. Moore claims the jury could have doubted her testimony because (1) it is unlikely that Moore would have revealed incriminating evidence to a recent acquaintance (which she was), (2) Vaughns acknowledged she never called the police and did not speak to them until they contacted her several weeks after the robbery, and (3) Vaughns' testimony at trial was not entirely consistent with the statement she gave to investigators. Again, we do not view these factors particularly damaging to Vaughns' credibility, and thus it seems probable that the jury believed her.
 
 
 28
 In addition to Thezan's and Vaughns' testimony, there was substantial evidence that Moore was the culprit. To begin with, Moore was at the scene of the crime. This is conclusively established by Moore's agreement with the Illinois Appellate Court's account of the facts, which stated that the victim saw him there just before the shooting. Moore, 576 N.E.2d at 901-02. Also, there is evidence linking Moore to the getaway car. After the robbery, based on reports that the offenders fled in a white station wagon, the police eventually found a car matching that description in an alley. Their search revealed a .30 caliber cartridge case on the passenger side; this was the same caliber of cartridge case that the police found at the scene of the crime. When the police showed a picture of this car to Lovelace Coston, he said that it was "similar" to a car that Moore had brought into his body shop not long before the robbery; in addition, Vaughns testified that Moore spoke of a white station wagon being involved in the crime. Also telling is the manner in which the police apprehended Moore. When approached at a stoplight by several unmarked police cars, Moore sped away. The ensuing high speed chase, complete with lights flashing and sirens blaring, only ended when Moore crashed into another car. Finally, we must not forget Detective Thezan's testimony and the rest of Vaughns' testimony. Both told how Moore implicated himself. To Vaughn, he even admitted shooting the armored car driver and displayed a bag full of cash, checks, and food stamps. Thus, even if there were some weaknesses in the witnesses' identification of Moore, we do not believe, in light of all the other evidence, that the prosecutor's remark had a "substantial and injurious" effect in determining the jury's verdict. We conclude that the prosecutor's indirect comment on Moore's failure to testify was harmless error.
 
 B. MOORE'S FOURTH AMENDMENT CLAIMS
 
 29
 Moore argues that the police violated his Fourth Amendment rights by arresting him without probable cause and by detaining him for 36 hours. Moore failed to raise these issues in his Petition for Leave to Appeal to the Illinois Supreme Court, see Exh. A, so he has procedurally defaulted on them.[5] Nutall v. Greer, 764 F.2d 462, 465 (7th Cir.1985). Having failed to argue either cause or prejudice, we are unable to review his Fourth Amendment claims, which in any case are likely barred by Stone v. Powell, 428 U.S. 465, 481-82 (1976).
 
 
 30
 C. THE LACK OF A COMPLETE STATE COURT RECORD
 
 
 31
 Moore argues that, when the State responded to his habeas petition, it improperly withheld the state court records, thus making it impossible for him to get a fair hearing in the district court. The State's response relies on a document not in the record, so we will not consider it. See Fed.R.App.P. 10(b)(3). Nevertheless, we conclude that Moore's position is without merit.
 
 
 32
 First, Moore seems to argue that 28 U.S.C. Sec. 2254(d)(8) compels the State to make certain admissions "unless that part of the record at the state court proceeding ... is produced." Moore Br. 43. Moore reaches this result by a selective quotation of Sec. 2254(d)(8). A careful reading of that provision reveals that it does not stand for the proposition Moore asserts. This is further evident from Sec. 2254(e), which places the burden on the petitioner to produce the relevant part of the state court record if the petitioner challenges the sufficiency of the evidence to support a state court finding. Only if the petitioner ?? indigent does the burden shift to the State. If the State cannot produce the records, then it is up to the district court to determine what weight to give the prior State court factual determination. See United States ex rel. Green v. Greer, 667 F.2d 585, 589-90 (7th Cir.1981).
 
 
 33
 Second, Moore claims that Rule 5 of the Rules Governing Section 2254 Cases supports his position. However, Rule 5, which governs the content of the respondent's answer to a habeas petition, merely states (in relevant part) that
 
 
 34
 [t]here shall be attached to the answer such portions of the transcripts as the answering party deems relevant. The court on its own motion or upon request of the petitioner may order that further portions of the existing transcript be furnished.
 
 
 35
 (Emphasis added). Moore does not argue that he requested additional portions of the transcript, so we find no error. Green, 667 U.S. at 590.
 
 D. CONCLUSION
 
 36
 The judgment of the district court denying Moore's petition for a writ of habeas corpus is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [1]
 On page three of his brief, Moore accepts the more detailed account of the facts of the case as provided by the Illinois Appellate Court in its decision denying his claims on direct review, see Moore, infra, so we will not repeat that account here
 
 
 [2]
 Moore also raises as an independent issue the trial court's alleged erroneous admission of a hearsay statement made by Debra Tucker to Detective Thezan. Because he offers no argument concerning this issue, see Moore Br. 42, the issue is waived. United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir.), cert. denied, 112 S.Ct. 141 (1991). Moore's claim that the prosecution improperly commented on this hearsay statement in closing argument is supported by an argument, which we address later in this order
 
 
 [3]
 Moore claims that he objected to both remarks, but he concedes taht he failed to renew either objection in a post-trial motion. Moore br. 19-24. More effectively acknowledges that he waived these claims by arguing that the "plain error" standard should govern our review of these issues. Id. at 21, 23-24
 
 
 [4]
 Not cited by the State, United States v. Rouleau, 894 F.2d 13, 16 (1st Cir.1990), supports the State's position. However, the opinion does not define "fair response," nor does it give any reasons for finding this type of response to be fair
 
 
 [5]
 It is also appears that he failed to raise them before the Illinois Appellate Court (which did not discuss any Fourth Amendment claims in its opinion). See Exh. F. Such a failure would also constitute a procedural default. United States ex rel. Duncan v. O'Leary, 806 F.2d 1307, 1313 (7th Cir.1986), cert. denied, 481 U.S. 1041 (1987); United States ex rel. Spurlark v. Wolff, 699 F.2d 354, 356 (7th Cir.1983) (en banc)