Lynn **HINRICHS,** Plaintiff–Appellant and Cross–Appellee,

v.

Gerald **WHITBURN,** Secretary, Wisconsin Department of Health and Social Services, Defendant and Third–Party Plaintiff–Appellee and Cross–Appellant,

v.

Louis W. **SULLIVAN,** M.D., Secretary of the U.S. Department of Health and Human Services; Marion Steffy, Regional Administrator of the U.S. Department of Health and Human Services, Family Support Administration, Chicago, Illinois, Third–Party Defendants–Appellees.

Nos. 91–3217, 91–3301.

United States Court of Appeals, Seventh Circuit.

Argued April 29, 1992.

Decided Sept. 23, 1992.

David Gault (argued), Michele Hughes, Dodgeville, Wis., for plaintiff-appellee.

F. Thomas Creeron (argued), James E. Doyle, Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for defendant-appellant.

Barbara F. Altman (argued), Lauren S. Ruby, Dept. of Health and Human Services, Region V, Office of the Gen. Counsel, Chicago, Ill., Richard D. Humphrey, Asst. U.S. Atty., Madison, Wis., for defendants-appellees.

Before CUMMINGS and COFFEY, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

CUMMINGS, Circuit Judge.

Plaintiff Lynn Hinrichs, who receives benefits pursuant to the Aid to Families with Dependent Children program ("AFDC"), teaches four of her six children at her home in Rock Springs, Wisconsin. She meets the requirements of Wis.Stat. § 118.165 and has been approved to home-teach by the Wisconsin Department of Public Instruction. Hinrichs is a traditionalist Roman Catholic and believes that it is her religious duty to teach her children. In November 1988, the Sauk County Department of Human Services sent her a notice regarding an enrollment appointment with the Wisconsin Employment Opportunities Program ("WEOP"), a job training and search program. She refused to attend a short orientation session and has steadfastly refused any participation in the WEOP, asserting that she already has a full-time job teaching her children for religious reasons. Her suit in federal court was dismissed at summary judgment on the grounds of ripeness.

## I.

Hinrichs, a traditionalist Roman Catholic, does not believe in the changes made in the Catholic Church by Vatican II. As a consequence, she does not attend mass at a Catholic parish because of the manner in which communion is performed. Her family watches the "Apostolate to the Handicapped" on television instead. Hinrichs be-

lieves that her family receives spiritual communion while watching this traditional mass. Hinrichs and her family have joined, as layperson members, the Marian Movement of Priests, a traditional Roman Catholic group based in Maine. A central tenet of Hinrichs' beliefs is the infallibility of the Pope.

Hinrichs began teaching her six children at home in 1986, after being approved for home-teaching by the Wisconsin Department of Public Instruction for that year.[1] In 1991, the ages of her children were 17, 15, 12, 10, 9 and 6. She testified in her deposition that she would always have taught them at home if she knew it was permissible. In her deposition, Hinrichs gave several reasons for beginning to home-teach. She wanted to give her children a good religious background oriented to her traditionalist beliefs. She objected to the humanist attitudes in the public schools, which she thought placed man in the role of God. Parochial schools, in her view, were too worldly and did not teach the traditional views in which she believes. She also objected to the hour each day her children had to spend on the bus.

The Sauk County Department of Human Services mailed Hinrichs a "Mandatory WEOP Enrollment Appointment Notice" on November 3, 1988. Hinrichs was required to attend a WEOP "enrollment meeting" on November 15, 1988, at 9:00 a.m., which was expected to last around three and a half hours. The notice stated "you are required to participate in the Wisconsin Employment Opportunities Program (WEOP). WEOP is administered by Job Service and designed to help you find employment."[2] Hinrichs called the contact person a few days later to explain that she

already had a job home-teaching, but was told she would have to attend the meeting. On November 14, 1988, Hinrichs' counsel wrote a letter to an official at the Sauk County Department of Human Services, stating that it would be unconstitutional to require Hinrichs to participate in WEOP and that she had "good cause" not to participate under Sec. HSS 208.08(3)(e) of the Wisconsin Administrative Code. On November 15, 1988, Hinrichs drove to the place where the introductory meeting was being held, but only informed the receptionist that she could not participate because of her home-teaching duties, and she did not attend the meeting.

There is some confusion in the record over Hinrichs' subsequent contacts with Wisconsin officials. On December 2, 1988, Hinrichs was mailed a "Mandatory WEOP Enrollment and Fact Finding Appointment Notice," which noted that she did not keep her November 15 appointment.[3] This notice apparently gave her the option to attend another introductory WEOP session, but also required an interview to explain her absence from the previous session. On December 9, 1988, another "Fact Finding Appointment Notice" was mailed to Hinrichs, apparently after she missed the session she was scheduled to attend on that day. The notice stated that "At this meeting you will have a chance to explain your apparent failure to meet WEOP requirements."

In late November or early December (Hinrichs could not recall the exact date), Hinrichs met with Candyce Potts of the Baraboo Job Service Office (which was administering the WEOP program) for a "fact-finding appointment." At that time,

1. Hinrichs' oldest child now attends a public high school, and her second-oldest child now attends parochial school.

2. WEOP at that time was Wisconsin's version of a Work Incentive Program ("WIN"), required by federal statute. See 42 U.S.C. § 602(a)(19)(A) and §§ 630–645. In the Family Support Act of 1988, Pub.L. No. 100–485, 102 Stat. 2377, Congress replaced WIN with a similar program known as the Job Opportunities and Basic Skills Program ("JOBS"). See 42 U.S.C. §§ 681–687. Wisconsin modified its WEOP program to com-

ply with JOBS on July 1, 1989. For a detailed discussion of the Family Support Act of 1988, see 1988 U.S.C.C.A.N. 2776.

3. The notice also stated that Hinrichs had "refused DVR [Department of Vocational Rehabilitation] information." This was apparently in reference to a meeting she had with DVR counselor Bob White on November 30, where she made clear that she was not claiming a disability-related reason for not participating in WEOP, despite some medical problems that she had.

Hinrichs explained to Potts that she felt she already had a job teaching her children at home, and could not participate in the WEOP program. Potts then informed her that she would be sanctioned for her failure to participate. In response to the December 9 fact-finding appointment notice, Hinrichs' attorney wrote Potts and again explained that Hinrichs was home-teaching for religious reasons and should therefore be exempted from WEOP participation.

On January 9, 1989, Hinrichs received notice of a sanction for her failure to attend the WEOP orientation session. This sanction, which has been stayed because of her state court proceedings and because of this litigation, consisted of a withdrawal of her AFDC benefits for three months.[4] Hinrichs requested a hearing before the Wisconsin Department of Health and Social Services. On March 13, 1989, Hinrichs and her counsel attended an administrative hearing, where she stated that her primary reason for not attending the WEOP program meetings was because she figured she already had a job, teaching her children. She did not specifically indicate at the hearing that her religious beliefs prevented her from participating in the WEOP program. Her counsel argued that a decision that denied Hinrichs AFDC benefits because of her failure to participate in the WEOP program would violate her constitutional rights.

After the administrative hearing, Wisconsin's *AFDC Handbook* was amended on July 1, 1989, to state: "Working does not include a caretaker teaching a child in a [Department of Public Instruction]-registered home educational program. Do not exempt the caretaker from having to participate in AFDC–WP for this reason, even though the home qualifies as a school." Predictably then, on October 15, 1989, the hearing officer found that Hinrichs did not have good cause for missing her WEOP appointments, and further found that she was not exempt from the program. The

officer stated that he did not have authority to consider any constitutional claims, and therefore upheld the sanction against Hinrichs. Hinrichs' request for rehearing was denied on November 29, 1989. Hinrichs then filed an appeal in Wisconsin state court where it still pends.

Hinrichs filed this complaint in federal court on February 1, 1990, against defendant Gerald Whitburn, the Secretary of the Wisconsin Department of Health and Human Services. The complaint alleged that Wisconsin's decision to sanction her violated her First Amendment right to religious liberty and her Fourteenth Amendment right to substantive due process and equal protection. On November 30, 1990, the district court denied Whitburn's motion to dismiss on abstention grounds due to the pending state court review of the Hinrichs' sanction. Whitburn then filed a third-party complaint against Louis Sullivan, the Secretary of the Department of Health and Human Services.[5] Hinrichs moved for summary judgment on May 6, 1991. On August 23, 1991, however, the district court entered summary judgment for Wisconsin and the Department, holding that Hinrichs' Free Exercise claim was not ripe and that her Due Process and Equal Protection claims were without merit. Hinrichs appealed the district court's ruling that her claim was not ripe, and Wisconsin cross-appealed the district court's decision not to apply the *Younger* abstention doctrine.[6]

## II.

■ Wisconsin asks us to reconsider Judge Crabb's decision not to abstain in deference to Hinrichs' ongoing state court proceedings. See *Hinrichs v. Goodrich*, 753 F.Supp. 261 (W.D.Wis.1990). We decline to reverse that decision. Wisconsin does not present any new case authority to support reversal, and we substantially agree with Judge Crabb's application of the *Younger* abstention doctrine, which begins

---

**4.** The AFDC benefits of Hinrichs' children were not affected by Hinrichs' sanction.

**5.** For convenience, we will refer to the state defendant as "Wisconsin" and the federal defen-

dants as "the Department" (Department of Health and Human Services).

**6.** Hinrichs does not appeal the dismissal of her Due Process and Equal Protection claims.

appropriately with the observation that "abstention by a federal court is the exception, not the rule." *Id.* at 263 (citing *New Orleans Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298).

The district court properly relied on our decision in *Alleghany Corp. v. Haase,* 896 F.2d 1046, 1053 (7th Cir.1990), vacated as moot, —— U.S. ——, 111 S.Ct. 1383, 113 L.Ed.2d 441,[7] where we noted that *"Younger* is confined to cases in which the federal plaintiff ha[s] engaged in conduct actually or arguably in violation of state law, thereby exposing himself to an enforcement proceeding in state court * * *."* The issue in this case is whether Hinrichs has arguably violated state law. Wisconsin insists that Hinrichs "violated state law" and was sanctioned for that violation when she failed to attend a mandatory WEOP orientation meeting and a follow-up fact-finding session. Although this argument has some logical appeal, it does not adequately reflect the fact that Wisconsin is not acting in a prosecutorial manner in this case. We agree with Judge Crabb that:

> [The] effort to cast plaintiff as a wrongdoer does not stand up to close examination. Plaintiff is not a malefactor. Defendant makes no allegation that plaintiff has engaged in any fraud in pursuing her right to receive benefits from the state. *Cf. Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (*Younger* requires federal court abstention when plaintiff is subject of state proceedings to recover payments that had been obtained by allegedly fraudulent means). * * * Plaintiff is simply challenging a condition imposed upon her if she wants to receive AFDC benefits. In this respect, she is seeking to do exactly what Alleghany was attempting: to challenge a statute imposing an allegedly unconstitutional requirement as a condition of obtaining a benefit. In plaintiff's case the benefit is the receipt of AFDC payments; in Alleghany's case, it was

the opportunity to purchase the stock of an insurance company. * * * There can be no interference with a *state prosecution* in this case, because no prosecution has ever been initiated against plaintiff.

753 F.Supp. at 265–266. The district court correctly declined to abstain.

## III.

■ We next turn to the central issue raised by Hinrichs: whether this case is ripe. The doctrine of ripeness is based on both constitutional and prudential grounds. *Koehring Co. v. Adams,* 605 F.2d 280, 282 (7th Cir.1979). Under Article III of the Constitution, federal courts may only adjudicate "cases or controversies" and may not render advisory opinions. *Wisconsin's Environmental Decade, Inc. v. State Bar of Wisconsin,* 747 F.2d 407, 410 (7th Cir. 1984), certiorari denied, 471 U.S. 1100, 105 S.Ct. 2324, 85 L.Ed.2d 842. Cases are unripe when the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts. In this regard, ripeness is closely related to its justiciability cousins, the doctrines of finality and standing. The Supreme Court in *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681, has stated that the rationale of ripeness

> is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

The Court in *Abbott Laboratories* elaborated a two-part standard for evaluating the ripeness of claims. A court must first weigh the fitness of the issues for judicial decision. It must then evaluate the hardship to the parties of withholding court consideration. *Id.* at 149, 87 S.Ct. at 1515.

7. It is apparent that mootness was the grounds for vacating *Alleghany* because of the question presented for certiorari. See 59 U.S.L.W. 3529 (February 5, 1991). For this reason, there is no

reason to discount the reasoning in that case. Inexplicably, no party in this case mentioned that *Alleghany* had been vacated.

The district court here concluded that plaintiff failed both criteria noted above: "she has not presented her claim for a religious exemption to the appropriate department personnel so that they can decide the matter on its merits, and she has not shown that she will suffer a hardship if this court does not hear her claim at this time." 772 F.Supp. 423, 428. In short, the district court believed that Hinrichs' claim that her religious liberty would be infringed by participation in the WEOP program is speculative. By not participating at all in the WEOP program, according to the district court, Hinrichs has not given Wisconsin an adequate opportunity to accommodate her particular religious beliefs. Hinrichs has also failed to explain adequately to Wisconsin officials exactly why her religious beliefs precluded her from participating at all in the program. See *id.* at 429. The district court therefore concluded that Hinrichs' First Amendment claim was not ready for judicial resolution.

Hinrichs argues that she has adequately presented her religious liberty claim to Wisconsin officials, and any further presentation would be futile. She notes that she has been sanctioned in the amount of three months' AFDC benefits for her failure to participate in the WEOP program, and that the sanction was affirmed by an administrative law judge. Also, on at least four occasions, Hinrichs has made clear the religious nature of her objections to the program.[8] Plaintiff also takes exception to the district court's conclusion that little hardship would follow from a ruling that her claim was not ripe. The court concluded that "plaintiff has not shown that the state would not continue to pay her full benefits while she pursues the next steps and presents her case to the department." *Id.* at 431. Plaintiff argues that she has shown hardship because it is clear that she will have to change her behavior in a significant manner in order to comply with the WEOP program.

■ Although Hinrichs' arguments are not without merit, we find ourselves in general agreement with the district court's reasoning on the ripeness issue. The issue of whether Wisconsin can force Hinrichs to take a full-time or even a part-time job as a condition for receiving AFDC benefits is not ripe for consideration. By steadfastly refusing all participation in the program, Hinrichs has prevented a federal court from reaching that issue. We cannot know at this time whether Wisconsin officials, after being fully apprised of Hinrichs' teaching schedule and the religious reasons for her home-teaching, would have required any substantial time commitment on her part to a paying job or to job training. It is not proper for this Court to issue an advisory opinion on that issue. Even though it seems likely that Wisconsin would not formally exempt her from the WEOP program, it is possible, as explained below, that Wisconsin could be flexible in applying that program to Hinrichs.[9]

In the administrative process, Hinrichs raised her Free Exercise claim in the most perfunctory manner. The two letters sent to Wisconsin officials by her attorney mention the Constitution, and state that she teaches her children at home because of her religion, but do not elaborate what her religious beliefs are and how a paying job would conflict with them. In her meeting with the case worker, Hinrichs apparently did not discuss those issues. Significantly, in her testimony before the administrative law judge, Hinrichs never even talked about her religion, even though she was asked at least twice what her reason was for not participating in the WEOP program. Her primary reason, she asserted at

---

**8.** These four occasions are 1) a November 14, 1988 letter to the Sauk County Department of Human Services, 2) a December 14, 1988 letter to Candyce Potts, 3) a meeting occurring sometime in late November or early December with Candyce Potts, and 4) the administrative hearing on March 13, 1989.

**9.** Wisconsin's AFDC handbook specifically states that home-teaching is not good cause for an exemption from the WEOP program. In addition, Hinrichs does not meet any of the exemption categories listed at Wis.Admin.Code HSS § 201.19(1). On the other hand, the AFDC handbook does not state that home-teaching *for religious reasons* can never constitute good cause.

the hearing, was that she already had another job. Her attorney argued at the hearing that her right to religious freedom of expression was implicated by the WEOP program.

If presented with all the facts surrounding Hinrichs' situation, Wisconsin officials might have declined to tell Hinrichs to take a full-time job. In the first instance, the Sauk County officials, like all government officials, have an obligation to follow the Constitution, *Alleghany*, 896 F.2d at 1051, and thus might have decided to require participation that would not conflict with her home-teaching.[10] Indeed, the WEOP program gives the officials a certain amount of flexibility. Under the Wisconsin Administrative Code, WEOP agencies "shall provide or make provision for * * * [c]ounseling to identify and resolve personal or family problems which may interfere with the person's ability to participate in WEOP activities or obtain and retain employment." HSS § 208.07. Furthermore, HSS § 208.08(3) lists as a good cause excuse "[a]ny other circumstance beyond the control of the client." The AFDC statute also provides that job assignments must "take into account the * * * family responsibilities * * * of the participant," 42 U.S.C. § 684(a)(1), and that "conditions of participation are reasonable," based on the participant's circumstances and child care needs. §§ 684(a)(4)–(5). These provisions support the conclusion that we should not reach the merits of this case now.

■ Hinrichs does not seriously argue that attending a 3½ hour orientation session would detract from her ability to home-school her children in accordance with her religious beliefs.[11] Her failure to attend this session, of course, is the basis of her sanction. Hinrichs, in effect, is asking us to excuse her from participating in any aspect of the program because, if the program was successful, it would lead to a substantial burden on the religiously-motivated home-teaching of her children. When it is not even arguable that the exercise of her religion has yet to be substantially burdened, however, we decline to reach the more difficult issue of whether she could be forced to take a full-time or substantial part-time job upon penalty of losing her AFDC benefits.

This conclusion is consistent with our decision in *Menora v. Illinois High School Ass'n*, 683 F.2d 1030 (7th Cir.1982), certiorari denied, 459 U.S. 1156, 103 S.Ct. 801, 74 L.Ed.2d 1003. In that case, we noted that "The conflicting claims of church and state are a source of some of the bitterest and most divisive controversies in our society. Weigh them and choose we shall if we must, but we want first to satisfy ourselves that the claims really are irreconcilable." *Id.* at 1033. Although the potential for conflict in this case might be greater than in *Menora* (which involved a purported conflict between a need for safety in basketball games and the religious requirement of some Jewish basketball players to wear a yarmulke), there remains the need for an actual, present conflict before a court can perform the delicate task of weighing the competing interests.

The district court's ruling placed a burden on plaintiff to show that a conflict exists between the free exercise of her religion and Wisconsin's interests, by complying to a greater extent than she had with the requirements of the WEOP program. We do not consider this an undue hardship under the second *Abbott Laboratories* prong, because it does not involve a substantial immediate impact on Hinrichs. See *Bethlehem Steel v. United States Environmental Protection Agency*, 536 F.2d 156, 162 (7th Cir.1976) (noting importance

---

**10.** We do not express an opinion whether they would have been constitutionally obligated to do so under the Free Exercise clause. We do note that it might be argued that Hinrichs is asking the government to support her religious beliefs.

**11.** Hinrichs does assert that the undisputed evidence shows that she believes that any partic-

ipation in the WEOP program "will interfere with her religious beliefs" (Reply Br. at 1). To the extent that this issue is ripe, we conclude that Wisconsin has not violated the Free Exercise clause by sanctioning Hinrichs for her failure to attend a 3½ hour WEOP orientation session.

of a substantial immediate impact under the hardship prong). The fact that further judicial review of Wisconsin's actions is possible under this ruling is also relevant. See *id.* at 163. The more important consideration in this case, in any event, is that the issues raised are not yet ready for judicial consideration. We also do not think this case falls within the futility exception to the ripeness doctrine, as we concluded in *Unity Ventures v. Lake County*, 841 F.2d 770, 775–776 (7th Cir.1988). Because Wisconsin retains flexibility in applying the WEOP program, it is not certain that Hinrichs' compliance with the program will lead to any substantial burden on her home-teaching.

Hinrichs apparently wants this Court to make an all-or-nothing ruling—either the Constitution exempts her from the WEOP program, or it doesn't and Wisconsin may put any condition it wants on her receipt of AFDC benefits. We decline this invitation to make such a sweeping ruling when the record does not properly present these issues.

Judgment is affirmed.