NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 19, 2014[*]
Decided June 20, 2014

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON *Circuit Judge*

No. 13-2205

| | |
|---|---|
| THOMAS POWERS, | Appeal from the United States District |
|     *Plaintiff-Appellant,* | Court for the Central District of Illinois. |
| | |
|     *v.* | No. 12-2041 |
| | |
| LAMAR COLEMAN and STEVE KEIM, | Michael M. Mihm, |
| | *Judge.* |
|     *Defendants-Appellees.* | |

**O R D E R**

Thomas Powers, an Illinois inmate who identifies himself as a Messianic Hebrew, sued the chief chaplain for the Illinois Department of Corrections ("IDOC") and the acting chaplain of Danville Correctional Center, asserting that they interfered with his First Amendment right to practice his religion when they denied him a kosher diet. The

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

case went to trial and a jury found for the defendants. Powers now appeals the jury verdict as well as the denial of his motion for new trial. Because there is no reasonable basis in the record to overturn the jury's verdict, we affirm the judgment.

We recite the facts in the light most favorable to the jury's verdict. *See Venson v. Altamirano*, 749 F.3d 641, 646 (7th Cir. 2014). Over a nine-year span, Powers changed his religious affiliation six times, ultimately converting to the Messianic Hebrew faith[1] while at the Dixon Correctional Center. At Dixon, Powers requested and received a kosher diet.

Eight months later Powers was transferred to Danville Correctional Center, and the grievance officer, acting in conjunction with Danville's acting chaplain, Lamar Coleman, twice rejected Powers's request for a kosher diet. In Coleman's view Powers was insincere in his religious belief, given his frequent religious conversions as reflected on his religious-history printout (an IDOC document that records an inmate's current and past religious affiliations) and his past complaints about the amount of soy in the prison food at Dixon (suggesting that his preference for a kosher diet stemmed from a desire to avoid soy products). Four months after a grievance officer denied his first request, Powers filed his second grievance and attached excerpts from the IDOC Chaplaincy Handbook noting that "some Messianic Hebrews observe a kosher diet." After receiving a copy of this grievance, Coleman consulted with IDOC's Chief Chaplain, Steve Keim, who stated that kosher laws would be satisfied by a vegan diet. Based on Coleman's recommendation, the grievance officer denied Powers's grievance, adding that a "vegan diet may be sufficient." Powers, however, refused the vegan diet. He was transferred in June 2012 to the Illinois Department of Mental Health facility in Rushville (for reasons the record does not reflect), where he began receiving a kosher diet.

Powers brought this suit under 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1, and the Illinois Religious Freedom Restoration Act, 775 ILCS § 35/15. After extended proceedings, Powers was allowed to pursue his free-exercise claim against Coleman and Keim.

The case proceeded to trial, at which Powers testified that he was a Messianic Hebrew who was required to keep kosher. He explained that kosher laws required that

---

[1] A Messianic Hebrew follows the laws of the Hebrew bible (the Old Testament), including rules on keeping kosher, and believes that Jesus Christ is the Messiah.

he use separate utensils and not mix meat and dairy products. A vegan meal, he maintained, did not satisfy these requirements.

On cross-examination the defendants questioned Powers about the sincerity of his demand for a kosher diet, which they suggested was merely a ploy to avoid soy. Powers could not recall expressing any health concerns about soy, so the defendants sought to impeach his testimony by introducing a letter that he had written to Dixon's warden requesting a meat-based kosher diet instead of a vegan diet based on concerns that a diet high in soy was "very unhealthy to men of [his] age." Powers objected to admission of this letter on relevancy grounds, arguing that he wrote the letter three years before arriving at Danville. The court admitted the letter as proper impeachment evidence, and allowed the defendants to ask Powers about the adequacy of a vegan diet under kosher laws. Powers responded that vegan meals were not kosher and added that "soy content has a lot of problems with it."

Powers also objected to the admission of the two copies of his religious-history printout that contained discrepant markings at the bottom of each page. One copy (that the defendants had obtained during pretrial discovery) contained a handwritten notation from Coleman stating, "no consistency"; another copy (that the defendants' lawyers provided to Coleman at trial) contained the same notation, but added the phrase, "trying to avoid soy." The court admitted both printouts into evidence and had Coleman testify about the discrepancies. Coleman could not recall making the notations but suggested that he likely made them on separate printouts on different days.

The jury returned verdicts in favor of the defendants, finding that the defendants did not violate Powers's First Amendment rights by denying him a kosher diet.

Powers then moved for a new trial based on fraud and misconduct, contending that he was prejudiced by the defendants' introduction of a fabricated document at trial—one of the religious-history printouts. The defendants insisted that both printouts were authentic and tried to explain the discrepancy by asserting that Coleman likely created the notations on different days. The court denied Powers's motion because he explored those issues at trial and uncovered no fraudulent conduct.

On appeal Powers primarily challenges the sufficiency of the evidence that supported the jury's verdict. He maintains that he presented evidence sufficient to establish the sincerity of his religious beliefs, pointing to his degree in theology and the fact that he was currently observing a kosher diet (and had kept kosher in the past).

We will not overturn a jury's verdict if it has a reasonable basis in the record. *See Whitehead v. Bond*, 680 F.3d 919, 929 (7th Cir. 2012); *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 877 (7th Cir. 2011). At trial Powers had to establish that his sincere religious beliefs required a kosher diet, *Vinning-El v. Evans*, 657 F.3d 591, 595 (7th Cir. 2011); *see Shakur v. Schriro*, 514 F.3d 878, 885 (9th Cir. 2008), but substantial evidence in the record reflected insincerity. Powers converted religions six times in nine years, according to his religious-history printout. In addition his resistance to soy products—as exemplified in his letter to Dixon's warden and his past complaints there about the prevalence of soy in the prison diet—called into question whether his request for a kosher diet stemmed from sincerely held religious beliefs or a dislike of soy. Finally, jurors could question his sincerity after he testified that kosher laws prevented him from mixing meat and dairy and then said immediately that a cheeseburger (that is, cheese on top of beef) would be kosher.

Powers also argues that the district court abused its discretion by allowing the defendants to impeach him with the letter he wrote to Dixon's warden about his dietary preferences—a letter that he objected to on relevancy grounds. Powers now abandons the relevancy challenge and for the first time characterizes the letter as inadmissible hearsay because it was offered by the defendants to prove that he requested a kosher meal to avoid soy. This letter, however, was admissible as a nonhearsay admission. Powers admits that he wrote the letter to Dixon's warden and that it was offered against him by the defendants—making it a nonhearsay admission. *See* FED. R. EVID. 801(d)(2)(A); *Jordan v. Binns*, 712 F.3d 1123, 1128–29 (7th Cir. 2013); *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 779 (7th Cir. 2006).

Powers next asserts that the district court abused its discretion when it denied his motion for new trial based on the defendants' fraud and misconduct when they introduced the religious-history printouts at trial. But the district court properly denied the motion because Powers could not show that the alleged fraud prevented him from fully and fairly litigating his case at trial. *See Venson*, 749 F.3d at 651; *Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995). The district court appropriately admitted both documents, allowed the parties to present competing testimony about fabrication, and then left it to the jury to evaluate their significance. *See Marcus & Millichap Investment Services of Chicago, Inc. v. Sekulovski*, 639 F.3d 301, 308 (7th Cir. 2011). Powers had an opportunity to question Coleman about the discrepancies on the printouts and he uncovered no evidence of fraud or misconduct.

Finally, Powers challenges the district court's denial of a preliminary injunction but this point is moot because there is nothing left to enjoin—Powers was transferred to another facility and the jury decided the case in favor of the defendants. *See Medlock v. Trustees of Indiana*, 683 F.3d 880, 882 (7th Cir. 2012); *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004).

Accordingly, we **AFFIRM** the judgment of the district court.